IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**FROILAN REYES**                                                                                              **PLAINTIFF**
**ADC #155527**

v.                                    No: 4:17-cv-00762 DPM-PSH

**DAVID B. WARNER,** *et al.*                                                            **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Froilan Reyes, an inmate confined at the Tucker Unit of the Arkansas Department of Correction ("ADC"), filed this *pro se* 42 U.S.C. § 1983 suit alleging that he received inadequate medical care while incarcerated at the Pulaski County Regional Detention Facility ("PCRDF") and at the ADC. Doc. No. 2. Reyes asserts

both § 1983 and pendant state medical malpractice claims. *Id.* Reyes has filed several amended complaints, *see* Doc. Nos. 7, 11, 41 & 59, and his claims against several defendants have been dismissed, s*ee* Doc. Nos. 12, 95 & 113. Reyes' only remaining claim is that Sharyn Rohder, an Advanced Practice Registered Nurse ("APRN"), failed to refer him to an optometrist in July 2017. *See* Doc. Nos. 111 & 113 (recommendation and order on motion for summary judgment limited to the issue of exhaustion of administrative remedies)

Before the Court is a motion for summary judgment, brief-in-support, and statement of facts filed by Rohder. *See* Doc. Nos. 121-123. Reyes filed a response (Doc. No. 125), but he did not specifically controvert the facts set forth in Rohder's statement of facts (Doc. No. 123). Accordingly, those facts are deemed admitted. *See* Local Rule 56.1(c). Rohder's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and Rohder is entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to

the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

Reyes initially sued several defendants relating to the loss of vision in his right eye. Doc. Nos. 2, 7, 11, 41 & 59. He complained of treatment relating back to 2012, and specifically alleged that a Gunderson Flap procedure performed by Dr. David Warner in 2014 caused him to lose vision in that eye. *See id.*; *see also* Doc. No. 84. Reyes' claims against APRN Rhoder are based on her treatment of him at the ADC's North Central Unit in July 2017. Doc. No. 59 at 6. Reyes alleges that around July 8, 2017, he placed several sick calls seeking medical attention, but Rohder would not refer him to an optometrist due to racial prejudice and discrimination. *Id.*

The following facts are taken from those submitted by APRN Rohder which are supported by the following documentary evidence: Reyes' medical records from January 26, 2017 through August 18, 2017 (Doc. No. 123-1); Reyes' sick call requests from April 16, 2017 through July 26, 2017 (Doc. No. 123-2); and the Declaration of Dr. Jeffrey Stieve (Doc. No. 123-3).

*Reyes' Relevant Medical Records*

On January 26, 2017, Reyes was seen by a sick call nurse for complaints of eye pain and a request for a medication refill. Doc. No. 123-1 at 1. Reyes requested to be seen by a doctor. *Id.* Reyes' medication was refilled, and he was referred to an optometrist for follow-up. *Id.* An optometry consultation request, per verbal order by Dr. Marty Hearyman, was made that same day. *Id.* at 2. The optometry

consultation request was approved on January 27, and the appointment was scheduled on February 3. *Id.*

Meanwhile, a previously-scheduled six-month ophthalmology[1] check at Jones Eye Institute at UAMS occurred on February 17, 2017. Doc. No. 123-1 at 3-6. Dr. David Warner examined Reyes and recommended that he return in six months (around August 17, 2017) for a check-up. *Id.* at 5.

The optometry appointment scheduled on February 3 took place on March 1, 2017. *Id.* at 7. The optometrist recommended continuing with current medications and having a follow-up in one year. *Id.*

After March, other than a couple of medication renewal requests, there were no Health Service Request Forms (sick calls) submitted by Reyes relating to his eye condition prior to his return appointment with the ophthalmologist in August 2017.[2] Doc. No. 123-2; Doc. No. 123-3.

---

[1] The Court takes judicial notice that an optometrist is "an independent primary health care provider who examines the eyes to evaluate health and visual abilities, diagnoses eye diseases and conditions of the eye and visual system, and provides necessary treatment such as eyeglasses, contact lenses, vision therapy, and low vision aids" whereas an ophthalmologist is "a physician who specializes in diagnosing and prescribing treatment for defects, injuries, and diseases of the eye" who may also provide surgery. *See* https://medical-dictionary.thefreedictionary.com/optometrist and https://medical-dictionary.thefreedictionary.com/ophthalmologist.

[2] The Court notes that a grievance response dated October 4, 2017, submitted in connection with the defendants' motion for summary judgment on the issue of exhaustion indicates that the last time Reyes had filed a sick call request complaining of an eye issue was March 24, 2017. *See* Doc. No. 99-1 at 30.

Reyes submitted a sick call request on June 26, 2017, for neck, arm and shoulder pain, and was examined by Dr. Hearyman on July 6, 2017. Doc. No. 123-2 at 4; Doc. No. 123-1 at 8. Reyes submitted another sick call request relating to shoulder pain on July 11, 2017. Doc. No. 123-1 at 9. He was seen by a sick call nurse on July 14, 2017, and referred to an APN for pain. *Id.* at 11. APRN Rohder then examined Reyes on July 19, 2017, for his complaints of left shoulder pain and medication for that pain. *Id.* at 13. Reyes submitted another sick call request on July 26, 2017, asking for a refill of Lisinopril (medication for high blood pressure). *Id.* at 14. He was seen by a sick call nurse on July 27, 2017, and received the requested refill. *Id.* at 15.

APRN Rohder next saw Reyes during a routine Chronic Care visit for hypertension on July 31, 2017. Doc. No. 123-1 at 17-19. On August 1, 2017, Reyes saw Dr. Hearyman. Doc. No. 123-1 at 22. The medical record indicates they discussed medications and Reyes' neck pain, but there is no mention of any eye issues other than a note to schedule a six-month ophthalmology follow-up. *Id.* The same day, Dr. Hearyman prepared a consultation request for Reyes to return for his routine six-month ophthalmology follow-up at Jones Eye Institute at UAMS. Doc. No. 123-1 at 20-21. The consultation request was approved, and the appointment was scheduled on August 2, 2017. *Id.*

Reyes saw APRN Rohder again on August 13, 2017, to follow-up on his blood pressure. Doc. No. 123-1 at 24. There is no indication he complained about his eye at this appointment. *Id.*

Reyes' was examined by ophthalmologist Dr. Warner again on August 18, 2017. Doc. No. 123-1 at 25-29. The record from that visit lists Reyes' only complaint as constant tearing in both eyes that gets worse throughout the day. *Id.* at 26. The notes also indicate that Reyes stated he had no changes in his vision since the last visit. *Id.* Dr. Warner renewed certain prescriptions and suggested Reyes return in about six months. *Id.*

### *Dr. Jeffrey Stieve's Opinion*

Dr. Jeffrey Stieve, a non-party medical doctor and the Regional Medical Director for Wellpath LLC, the contracted private healthcare provider that furnishes medical services to ADC inmates, reviewed Reyes' 2017 records marked as Exhibits A and B (Doc. No. 123-1 & Doc. No. 123-2) and prepared a declaration in support of APRN Rohder's motion for summary judgment. Doc. No. 123-3.

In Dr. Stieve's opinion, APRN Rohder provided proper care for the complaints Reyes made, all of which had nothing to do with his eye. Doc. No. 123-3 at 2-3. Reyes submitted no sick call requests relating to his eye during July or August of 2017, and the three encounters Reyes had with Rohder during the relevant time period concerned complaints of left shoulder pain and hypertension. *Id.*

Dr. Stieve further opines that Reyes received proper care for his eye condition and was appropriately referred to eye specialists. Doc. No. 123-3 at 2-3. Despite the lack of sick call requests on the issue, medical staff followed recommendations relating to follow up consultations with eye specialists. *Id.* Specifically, Reyes saw an optometrist in March 2017 and was not recommended to return for another year. *Id.* at 1-2. Additionally, after being seen for his six-month check-up at Jones Eye Institute on February 17, 2017, after which it was recommended he return in six months, Reyes did indeed return six months later, on August 18, 2017. *Id.* at 2. Dr. Stieve states that it was appropriate for Dr. Hearyman, a provider and the medical director at Reyes' unit, to prepare the consultation request for ophthalmology follow-up, which resulted in Reyes being seen in a timely fashion by the ophthalmologist. *Id.* at 2.

*Reyes' Response*

Reyes does not specifically dispute any of these facts. Doc. No. 125. He maintains that he submitted sick call requests relating to his eyes, but does not specify when he made those sick call requests.[3] *Id.* at 1. He refers to his January

---

[3] Although the Court is not required to search the entire case record to find relevant evidence, *see Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1085 (8th Cir. 1999), the Court reviewed certain exhibits recently filed by Reyes (Doc. Nos. 116, 118-119). Those exhibits consisted of grievances and requests filed in 2018 and 2019, after this lawsuit was filed. The Court also reviewed the attachments to Reyes' complaints (Doc. Nos. 7 & 59). None contain any sick call requests from July 2017.

2017 encounter with a sick call nurse and his March 1, 2017 optometry exam. *Id.* Reyes further argues that Dr. Stieve is unqualified to give an opinion about his medical care because he did not personally treat Reyes. *Id.* Finally, Reyes indicates that he filled out sick call requests during the beginning of 2017 but APRN Rhoder refused to talk to him about his eye and told him to leave the infirmary. *Id.*

## IV. Analysis

### A. *Eighth Amendment Deliberate Indifference*

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976). To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Finally, an inmate alleging that a delay in

9

medical treatment constitutes deliberate indifference is required to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). If the inmate does not, he fails to raise a genuine issue of fact on an essential element of his claim, and summary judgment is appropriate. *Id.*

There is no evidence in the record to suggest that APRN Rohder was deliberately indifferent to Reyes' serious medical needs during the relevant time period. Specifically, there is no evidence that Reyes submitted a sick call request in July 2017 relating to his eye condition. Further, the evidence shows that he was promptly seen for the sick calls he did submit. Reyes had three encounters with Rohder - July 19, July 31, and August 13 – and none of them involved claims related to Reyes' eyes. Further, even assuming Reyes complained about his eyes during these exams, any failure by Rohder to schedule an exam with a specialist is of no relevance because Reyes was scheduled to, and did, see an ophthalmologist on August 18.[4]

---

[4] To the extent that Reyes asserts he should have been seen by an optometrist instead of an ophthalmologist, that assertion fails to support his claim of deliberate indifference. As Dr. Stieve explained, an ophthalmologist is more qualified to treat Reyes' eye condition than an optometrist.

Furthermore, Dr. Stieve explains that Reyes was timely seen by Dr. Warner. At his appointment with Dr. Warner on February 17, it was recommended that Reyes return in six months. And the return visit to Dr. Warner in fact occurred as recommended, almost to the day. At that visit, on August 18, Reyes' only complaint was tearing in both eyes, and no other changes were noted. Dr. Warner recommended a follow up visit in another six months. The notes from Dr. Warner's August 18 exam state that Reyes' vision had not changed since his last appointment six months prior. Doc. No. 123-1 at 26-28.

Reyes also has no basis for a claim that he suffered any damages between July and August 18, 2017 because of a delay in scheduling an appointment with a specialist. Reyes has come forward with no evidence that his eye deteriorated because of a delay in treatment. Accordingly, even if APRN Rohder had dismissed any complaints made by Reyes about his eyes, Reyes cannot prove that her failure to act caused his eye condition to worsen before he saw Dr. Warner on August 17, 2017. In fact, the undisputed evidence supports a finding that any delay did not result in a worsening of Reyes' eye condition. APRN Rohder is therefore entitled to summary judgment on Reyes' Eighth Amendment deliberate indifference claims.

### B. State Law Negligence

Because Reyes' constitutional claims are subject to dismissal, the Court should decline to exercise jurisdiction over his state law negligence claims. *See Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed).

## V. Conclusion

The undisputed facts do not support a finding that APRN Rohder was deliberately indifferent to Reyes' serious medical needs. The undersigned therefore recommends that Rohder's motion for summary judgment (Doc. No. 121) be granted. Reyes' constitutional claims should be dismissed with prejudice, and the Court should decline to exercise supplemental jurisdiction over Reyes' state law negligence claims and should dismiss those claims without prejudice.

SO RECOMMENDED this 23rd day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE